T.C. Memo. 2013-271

UNITED STATES TAX COURT

CHRISTINE C. PETERSON AND ROGER V. PETERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16263-11, 2068-12.             Filed November 25, 2013.

<u>Mitchell I. Horowitz</u> and <u>Micah G. Fogarty</u>, for petitioners.

<u>Andrew M. Tiktin</u> and <u>Timothy A. Sloane</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  After concessions, the issues for decision are:  (1) whether retirement plan contributions of $275,365, $312,266, and $173,500 relating to 2006, 2007, and 2008, respectively, are deductible pursuant to section 404(a);[1] and

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** (2) whether distributions petitioners received during 2009 are subject to self-employment tax pursuant to section 1401.

FINDINGS OF FACT

In 1982, Mrs. Peterson began working as an independent beauty consultant for Mary Kay, Inc. (Mary Kay). Mrs. Peterson sold Mary Kay products[2] and recruited other individuals to join the company. She was extremely successful and, on July 1, 1991, entered into a national sales director[3] (NSD) agreement with Mary Kay. Mrs. Peterson earned commissions on wholesale purchases of Mary Kay products by her network of independent beauty consultants, sales directors, and NSDs.

On November 12, 1992, and July 1, 2005, Mrs. Peterson and Mary Kay entered into a Family Security Program (FSP) agreement and a Great Futures Program (GFP) agreement, respectively.[4] Both agreements provided that Mary

---

[1](...continued)
Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Mary Kay is a wholesale distributor of cosmetics, toiletries, skin care, and related products.

[3]National sales director is the highest Mary Kay sales position.

[4]Mary Kay had the authority to "amend, modify or terminate" either

(continued...)

[*3] Kay would make distributions to Mrs. Peterson after her completion of five years of NSD service and retirement from the company. Pursuant to the FSP agreement, Mrs. Peterson was entitled to a monthly distribution based on an "Applicable Percentage" of her "Final Average Commissions" (i.e., an average of her three highest commission years during the five years prior to her retirement). Pursuant to the GFP agreement, Mrs. Peterson was entitled to a monthly distribution based on an "Applicable Percentage" of certain prospective wholesale purchases. The "Applicable Percentage" pursuant to both agreements was based on Mrs. Peterson's age at retirement. Effective December 31, 2008, Mary Kay amended the FSP and the GFP agreements to expressly provide that each program was "intended to be a non-qualified deferred compensation arrangement" and was "intended to meet the requirements of Section 409A of the Code and shall be construed and interpreted in accordance with such intent."

Petitioners, on April 1, 2000, entered into the Christine Peterson Defined Benefit Plan and Trust (CP Plan), designated themselves as trustees, and designated Mrs. Peterson as the employer. In December 2002, petitioners formed NSD Interests, L.P. (NSD Interests) a Georgia limited partnership. Petitioners

---

[4](...continued)
agreement "at any time and in any manner."

[*4] were limited partners of NSD Interests, and their wholly owned entity was the general partner. Mrs. Peterson attempted to assign her Mary Kay commissions to NSD Interests. The assignment, however, was ineffective because Mary Kay did not consent. On December 29, 2003, NSD Interests entered into an adoption agreement relating to the NSD Interests, L.P., Defined Benefit Plan and Trust (NSD Plan). The adoption agreement provided that it was "an amendment and restatement of a previously established qualified plan of the Employer which was originally effective January 1, 2000" (i.e., the CP Plan). The NSD Plan designated NSD Interests as the employer and petitioners as trustees.

Mrs. Peterson received nonemployee compensation from Mary Kay of $750,127, $799,191, and $892,543 relating to 2006, 2007, and 2008, respectively. In 2009, Mrs. Peterson retired from Mary Kay and received nonemployee compensation pursuant to the FSP and the GFP agreements of $489,707. Petitioners timely filed their 2006, 2007, 2008, and 2009 (years in issue) Federal income tax returns. On Schedules C, Profit or Loss From Business, petitioners reported "Other Expenses" equaling Mrs. Peterson's nonemployee compensation. NSD Interests timely filed Federal income tax returns relating to the years in issue and reported gross receipts of $750,127, $799,191, $892,543, and $489,707 (i.e., the same amounts reported on petitioners' Schedules C). NSD Interests claimed

[*5] deductions of $275,365, $312,266, and $173,500 for retirement contributions to the NSD Plan relating to 2006, 2007, and 2008, respectively.

Respondent, on April 7, 2011, sent petitioners a notice of deficiency relating to 2006 and 2007 and on October 18, 2011, sent petitioners a notice of deficiency relating to 2008 and 2009 (collectively, notices). In the notices, respondent determined that petitioners were subject to self-employment tax relating to their distributive shares of net partnership income reported by NSD Interests and were liable, pursuant to section 6662(a), for accuracy-related penalties. On July 11, 2011, and January 23, 2012, petitioners, while residing in Florida, timely filed petitions with the Court. In amendments to answers filed on August 30 and December 13, 2012, respondent determined that NSD Interests was not engaged in a trade or business during the years in issue; deductions claimed by NSD Interests were not ordinary and necessary expenses; NSD Interests was disregarded as a partnership for Federal income tax purposes; all items of income reported by NSD Interests were properly allocable to Mrs. Peterson; NSD Interests did not qualify as an employer pursuant to section 401(c)(4); and Mrs. Peterson's nonemployee Mary Kay compensation was subject to self-employment tax. After concessions, the remaining issues for decision are whether retirement plan contributions that NSD Interests made relating to 2006, 2007, and 2008 are deductible pursuant to

[*6] section 404(a); and whether distributions petitioners received during 2009, pursuant to the FSP and the GFP agreements, are subject to self-employment tax.

OPINION

Respondent contends that NSD Interests was not engaged in a trade or business and therefore was not, pursuant to section 404(a), entitled to deduct contributions to the NSD plan. Respondent bears the burden of proof because he raised this theory for the first time in his amendments to answers. See Rule 142. NSD Interests' contributions may be deductible pursuant to section 404(a) if they are "expenses which would be deductible under section 162 (relating to trade or business expenses) or 212 (relating to expenses for production of income)", but "only to the extent that they are ordinary and necessary expenses". See sec. 404(a); sec. 1.404(a)-1(b), Income Tax Regs. "A partnership activity does not constitute a trade or business unless the partnership engages in the activity with the predominant purpose and intention of making a profit." Flowers v. Commissioner, 80 T.C. 914, 931 (1983). In determining whether NSD Interests was engaged in a trade or business, all relevant facts and circumstances must be taken into account. See Surloff v. Commissioner, 81 T.C. 210, 233 (1983).

Petitioners concede that NSD Interests "was not engaged in a trade or business in 2008 * * * and was merely the passive recipient of income". Mrs.

[*7] Peterson readily acknowledged that NSD Interests was merely a "structure" to hold her Mary Kay earnings and that it was created "for the tax savings". Furthermore, petitioners concede that during 2006, 2007, and 2008, NSD Interests had no income and that the income reported on its returns should have been reported on petitioners' returns. In sum, NSD Interests was not engaged in a trade or business during 2006, 2007, and 2008. See Flowers v. Commissioner, 80 T.C. at 931; Hager v. Commissioner, 76 T.C. 759, 784-785 (1981). Accordingly, NSD Interests is not entitled to deduct retirement plan contributions relating to these years. See sec. 404(a); Surloff v. Commissioner, 81 T.C. at 240; sec. 1.404(a)-1(b), Income Tax Regs.

Respondent further contends that Mrs. Peterson was not an employer and therefore is not, pursuant to section 404(a), entitled to deduct retirement contributions to the NSD plan. Respondent concedes that the NSD plan is valid; Mrs. Peterson "was engaged in carrying on a Mary Kay business during the taxable years 2006, 2007, and 2008"; and certain "expenses that were originally reported on the Form 1065 for NSD Interests are allowable as deductions and are reportable on Schedule[s] C of petitioners' Form[s] 1040". Mrs. Peterson formed

[*8] the CP Plan and was designated as the employer[5] pursuant to it. On December 29, 2003, NSD Interests amended and restated the CP Plan. The NSD Plan defined an "Employer" as "the entity specified in the Adoption Agreement, any successor which shall maintain this Plan and any predecessor which has maintained this Plan." Mrs. Peterson (i.e., a predecessor who maintained the plan) was an "Employer" pursuant to the NSD Plan, and the retirement contributions were "expenses which would be deductible under section 162". See sec. 1.404(a)-1(b), Income Tax Regs. Accordingly, Mrs. Peterson is entitled to deduct, pursuant to section 404(a), the retirement contributions relating to 2006, 2007, and 2008.

Petitioners contend that the distributions they received during 2009 pursuant to the FSP and the GFP agreements are not subject to self-employment tax. We disagree. Section 1401 imposes a tax on a taxpayer's self-employment income. Self-employment income consists of gross income derived by an individual from any trade or business carried on by that individual. See sec. 1402(a) and (b). Mrs. Peterson formerly carried on a trade or business. Therefore, Mary Kay's 2009 distributions pursuant to the FSP and the GFP agreements are subject to self-employment tax if they were "derived" from Mrs. Peterson's business (i.e.,"'tied

---

[5]Pursuant to sec. 401(c)(4), "An individual who owns the entire interest in an unincorporated trade or business shall be treated as his own employer."

[*9] to the quantity or quality of * * * [her] prior labor'"). See Jackson v. Commissioner, 108 T.C. 130, 135-136 (1997) (quoting Milligan v. Commissioner, 38 F.3d 1094, 1098 (9th Cir. 1994), rev'g T.C. Memo. 1992-655). The Mary Kay distributions were "tied to" the quantity and quality of Mrs. Peterson's prior labor. See id. Pursuant to the FSP agreement, Mrs. Peterson's distributions were based on her average commissions over the five years prior to her retirement. Pursuant to the GFP agreement, Mrs. Peterson's distributions were based on the postretirement wholesale volume of her network (i.e., how well the network performed based on her prior services). In addition, Mary Kay's distributions pursuant to both plans were based on Mrs. Peterson's age at retirement and minimum years of service. Moreover, the FSP and the GFP agreements expressly provided that the distributions were deferred compensation (i.e., related to Mrs. Peterson's prior labor). Petitioners failed to adduce proof sufficient to alter the construction of these unambiguous agreements or show that they were unenforceable. See Plante v. Commissioner, 168 F.3d 1279, 1280-1281 (11th Cir. 1999), aff'g T.C. Memo. 1997-386; Commissioner v. Danielson, 378 F.2d 771, 775 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965). Accordingly, the 2009 FSP and GFP distributions are subject to self-employment tax pursuant to section 1401.

**[\*10]**  Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decisions will be entered under</u>

<u>Rule 155</u>.